IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGIA A. HOPE, | : | CIVIL ACTION |
| | : | No. 15-06749 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FAIR ACRES GERIATRIC CENTER, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                March 29, 2016

## I.   INTRODUCTION

Plaintiff Georgia A. Hope brings this action against
Defendant Fair Acres Geriatric Center ("Fair Acres"), a nursing
home that provided care to Plaintiff from January 2014 to
November 2014. During her stay at Fair Acres, Plaintiff suffered
a series of wounds and medical complications. Plaintiff alleges
that these injuries were caused by Fair Acres' negligent
practices and in violation of her federal statutory rights. Fair
Acres has moved to dismiss Plaintiff's claims. For the reasons
that follow, the Court will grant the motion.

## II.   BACKGROUND AND PROCEDURAL HISTORY

In January 2014, Plaintiff Georgia A. Hope was
admitted to Fair Acres, a county-owned nursing home located in
Lima, Pennsylvania. Compl. ¶ 3, ECF No. 1. Plaintiff was 90

years old at the time of her admission. Id. ¶ 4. During her stay at Fair Acres, Plaintiff experienced infection, gangrene, dehydration, and a lower extremity sacral wound that resulted in a partial leg amputation. Id. ¶ 11.

On December 22, 2015, Plaintiff filed her Complaint against Fair Acres, alleging negligence per se; negligence; corporate negligence; violation of civil rights under § 1983 for Fair Acres' failure to provide the level of care and protection required by the Federal Nursing Home Reform Amendments ("FNHRA"), 42 U.S.C. § 1396 et seq., and Omnibus Budget Reconciliation Act of 1987 ("OBRA") regulations, 42 C.F.R. § 483.1 et seq.; violation of the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395y(b), as to medical expenses incurred and paid for by Medicare; and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-1 to 201-9.[1]

According to Plaintiff, Fair Acres' medical director, nursing administrator, assistant administrators, and nursing staff failed to update Plaintiff's plan of care when her condition declined. Compl. ¶ 9. Plaintiff also alleges that Fair Acres failed to recognize the decline in her functional

---

[1]      The counts in the Complaint are incorrectly numbered as "Second" through "Seventh," omitting any "First" count. See Compl. 9.

abilities and the onset of her injuries. Id. It is further
alleged that, inter alia, Fair Acres failed to assist Plaintiff
when she experienced pain, swelling, redness, and infection in
November 2014. Id. Plaintiff also alleges that Fair Acres failed
to take preventive measures, such as creating an adequate risk
assessment, and failed to adequately train its employees. Id.
¶ 12.

On January 20, 2016, Fair Acres filed its motion to
dismiss. ECF No. 4. Plaintiff then filed a response in
opposition, ECF No. 5, and Fair Acres filed a reply memorandum,
ECF No. 7. The Court having held a hearing with the parties,
Fair Acres' motion to dismiss is now ripe for disposition.

## III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to
state a claim upon which relief can be granted. Fed. R. Civ. P.
12(b)(6). When considering such a motion, the Court must "accept
as true all allegations in the complaint and all reasonable
inferences that can be drawn therefrom, and view them in the
light most favorable to the non-moving party." DeBenedictis v.
Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal
quotation marks omitted). To withstand a motion to dismiss, the
complaint's "[f]actual allegations must be enough to raise a
right to relief above the speculative level." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

IV.  **DISCUSSION**

Fair Acres moves to dismiss Plaintiff's negligence per se, negligence, and corporate negligence claims, arguing that it is afforded governmental immunity by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541, 8545. Fair Acres also contends that Plaintiff fails to state a claim under § 1983 and the FNHRA. As to Plaintiff's Medicare Secondary Payer Act claim, Fair Acres argues that it is "unfit for judicial review." Finally, Fair Acres argues that Plaintiff fails to state a claim for relief under the UTPCPL. Each argument will be addressed in turn.

A.  Subject Matter Jurisdiction

As an initial matter, Plaintiff asserts diversity of citizenship as the basis of federal jurisdiction. Compl. ¶ 1. Because the parties are both citizens of Pennsylvania, id. ¶¶ 2, 3; Def.'s Mot. 5 n.1, ECF No. 4, there is no diversity jurisdiction. See 28 U.S.C. § 1332(a). Instead, the court has federal question jurisdiction under 28 U.S.C. § 1331, because Plaintiff brings a § 1983 claim based on Fair Acres' alleged violations of the FNHRA and OBRA regulations. Compl. ¶¶ 32-38; Def.'s Mot. 5 n.1.

B.   <u>Negligence Claims</u>

Fair Acres first argues that the Pennsylvania
Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons.
Stat. §§ 8541, et seq., bars Plaintiff's common law negligence
claims. The PSTCA provides Pennsylvania municipal agencies with
general immunity from tort liability. <u>Id.</u> § 8541. Section 8541
states that

> [e]xcept as otherwise provided in this
> subchapter, no local agency shall be liable
> for any damages on account of any injury to
> a person or property caused by any act of
> the local agency or an employee thereof or
> any other person.

<u>Id.</u>

Here, the PSTCA applies to Plaintiff's common law
negligence claims. First, Fair Acres is a "local agency" because
it is an entity owned and operated by Delaware County. Compl.
¶ 5; Def.'s Mot. ¶ 4. Second, Plaintiff alleges damages based on
injuries caused by acts of Fair Acres' employees. <u>See, e.g.,</u>
Compl. ¶¶ 8-10, 12-13. Therefore, the PSTCA provides Fair Acres
with general immunity from tort liability.

Also, none of the PSTCA's exceptions apply. Under
§ 8542 of the statute, an injured party may nevertheless recover
in tort from a local agency if: (1) the damages would be
otherwise recoverable under common law or statute creating a
cause of action if the injury were caused by a person without a

6

defense under 42 Pa. Cons. Stat. § 8541; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one or more of the eight enumerated categories of immunity exceptions. 42 Pa. Cons. Stat. § 8542(a); see also Lindstrom v. City of Corry, 763 A.2d 394, 397 (Pa. 2000); Lockwood v. City of Pittsburgh, 751 A.2d 1136, 1139 (Pa. 2000) (citing Kiley v. City of Philadelphia, 645 A.2d 184, 185-86 (Pa. 1994)).

The eight exceptions are for (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals. 42 Pa. Cons. Stat. § 8542(b). "Because of the clear intent [of the Act] to insulate government from exposure to tort liability, the exceptions to governmental immunity are to be strictly construed." Lockwood, 751 A.2d at 1139 (citing Kiley, 645 A.2d at 185-86).

Here, Plaintiff argues in her opposition to Fair Acres' motion that the "willful misconduct" exception, found at 42 Pa. Const. Stat. § 8550, applies to her negligence claims. Pl.'s Opp'n 5, ECF No. 5-1. And accepting as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, the Court could possibly conclude that a

Fair Acres employee acted with willful misconduct. But
Plaintiff's suit is against the local agency, Fair Acres, not
the agency's employees in their individual capacities. So the
question is whether § 8550 operates to strip Fair Acres of its
immunity as a result of any individual employee's alleged
willful misconduct.

> Section 8550 provides that

> > [i]n any action against a local agency or
> > employee thereof for damages on account of
> > an injury caused by the act of the employee
> > in which it is judicially determined that
> > the act of the employee caused the injury
> > and that such act constituted a crime,
> > actual fraud, actual malice or willful
> > misconduct, the provisions of sections 8545
> > (relating to official liability generally),
> > 8546 (relating to defense of official
> > immunity), 8548 (relating to indemnity) and
> > 8549 (relating to limitation on damages)
> > shall not apply.

> Pennsylvania and federal courts have consistently held

that this exception applies only to the immunity of agency
<u>employees</u>, and not to the agencies themselves. As Judge Goldberg
recently explained:

> > By its terms, application of this
> > section withdraws protections that flow from
> > four separate and specific provisions (42
> > Pa. Con. Stat. § 8545, 8546, 8548, 8549).
> > The statute does not mention immunity set
> > forth in 42 Pa. Con. Stat. § 8541, which is
> > the provision that immunizes [local
> > agencies]. Pennsylvania courts have thus
> > concludes that section 8550 "only abolishes
> > immunity for willful misconduct which
> > pertains to local agency employees . . . and

> thus does not affect the immunity of local
> agencies." King v. Breach, 540 A.2d 976, 979
> (Pa. Cmwlth Ct. 1988). Federal cases,
> including DiSalvio v. Lower Merion School
> District, 158 F. Supp. 2d 553 (E.D. Pa 2001)
> [], are in accord. See, e.g., Joseph M. v.
> Northeastern Educ. Intermediate Unit 19, 516
> F. Supp. 2d 424, 444 (M.D. Pa. 2007)
> (dismissing school district based on
> immunity, while concluding that individual
> defendants could be held liable based on
> willful misconduct exception); DiSalvio, 158
> F. Supp. 2d at 563-64 (dismissing claims
> against district while permitting claims
> against individuals to go forward on willful
> misconduct theory).

Viney v. Jenkintown Sch. Dist., 51 F. Supp. 3d 553, 557 (E.D.

Pa. 2014); see also Fox Fuel v. Del. Cnty. Sch. Joint Purchasing

Bd., 856 F. Supp. 945, 955 n.9 (E.D. Pa. 1994) (reviewing a

dozen Pennsylvania and federal cases holding "that § 8550

distinguishes sharply between local agencies and the employees

of those agencies, with the local agency retaining its immunity

even in the presence of willful misconduct by its employees").

Thus, although an individual Fair Acres employee might

not be entitled to the protections of sovereign immunity due to

§ 8550, were the individual a defendant in this suit, Fair Acres

as a local agency retains its sovereign immunity despite claims

that arguably rise to willful misconduct on the part of any

individual employee. Fair Acres can be sued only for negligent

conduct falling into one of the eight exceptions listed in

§ 8542. None of those exceptions apply to Plaintiff's claims.

Plaintiff nevertheless argues that the PSTCA does not bar her negligence claims because she is "asserting a nursing home abuse and neglect case based upon the Federal Nursing Home Reform Amendments." Pl.'s Opp'n 5. But she fails to indicate how the alleged FNHRA violations would permit her common law negligence claims to go forward under the PSTCA. See, e.g., Massey v. Fair Acres Geriatric Ctr., 881 F. Supp. 2d 663, 665-66 (E.D. Pa. 2012) (explaining that the PSTCA "bars any claim based on common law negligence" against the county-owned nursing home facility, without regard to the plaintiff's separate § 1983 claim based on FNHRA violations); see also Mayer v. Berks Heim Nursing Home, No. 13-4497, 2014 WL 1096043, at *4 (E.D. Pa. Mar. 20, 2014) ("Plaintiffs' § 1983 claim is separate and distinct from their counts of medical malpractice."). Therefore, Plaintiff's common law negligence claims will be dismissed.

C.   Section 1983 Claim

Fair Acres next moves to dismiss Plaintiff's § 1983 claim. "Section 1983 is 'a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws.'" Massey, 881 F. Supp. 2d at 666 (quoting Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 525 (3d Cir. 2009)). In Grammer, the Third Circuit held that the FNHRA

established certain federally protected rights for nursing home residents that are enforceable under § 1983. 570 F.3d at 532.

Here, Fair Acres acted under the color of state law because it is owned and operated by Delaware County. Compl. ¶ 5; Def.'s Mot. ¶ 4. And Plaintiff's § 1983 claim is based on violations of the FNHRA. Compl. ¶¶ 32-38. So the Court must consider whether Plaintiff has sufficiently pleaded the remaining requirements for municipal liability.

"A municipality cannot be held liable <u>solely</u> because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978). Municipalities can be liable under § 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." <u>Id.</u> Liability arises where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Id.</u> at 690.

Municipalities can also face liability under § 1983 "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Id.</u> at 690-91. A "custom" arises from practices by

state officials that amount to entrenched behavior in the municipal employees. Id. at 691.

Under this Monell framework, a plaintiff must establish that (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom. Id. at 692-94.

But as a threshold matter, regardless of whether the plaintiff proceeds on the basis of a policy or custom, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). An official is a policymaker if, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question. Hill v. Borough of Kutztown, 455 F.3d 225, 245-46 (3d Cir. 2006). The official's authority to make the policy must be "final and unreviewable," id. at 245, because "[u]nder § 1983, only the conduct of those officials whose decisions constrain the discretion of subordinates constitutes the act of the municipality." Bielevicz, 915 F.2d at 850.

12

Here, Plaintiff makes no attempt to identify an official with the requisite power who made or failed to make a policy that caused her injuries. Plaintiff also fails to allege that a policymaker acquiesced in a well-settled custom, let alone that the policymaker's authority was "final and unreviewable." Therefore, Plaintiff fails to state a claim under § 1983 from the outset.

But even if Plaintiff had satisfactorily established the existence of a policymaker's role, Plaintiff fails to allege sufficient facts indicating the existence of a municipal policy or custom. Plaintiff's § 1983 claim relies on Fair Acres' alleged violations of the FNHRA and OBRA regulations. Compl. ¶ 35. Plaintiff's allegations are mostly restatements of particular FNHRA provisions and sections of the OBRA regulations. See, e.g., id. ¶¶ 37(a)-(g), 38 (a)-(k). But the remaining factual allegations from which the Court could infer a violation of these rules and regulations are as follows:

> (1) "The Defendant failed to inform the Plaintiff's physician of her significant change in development of infection, gangrene, dehydration and a lower extremity sacral wound and above knee amputation." Id. ¶ 38(a).
>
> (2) "The Defendant failed to notify the administrator and state official that Plaintiff developed infection, gangrene, dehydration and a lower extremity sacral wound and above right knee amputation." Id. ¶ 38(b).

    (3)  "[T]he facility failed to conduct an assessment after a significant change in resident's condition, which included her risk for developing internal bleeding." <u>Id.</u> ¶ 38(e).

    (4)  "The Defendants[] [sic] failed to ensure its nurses' aides were able to demonstrate competency and techniques necessary to care for the late[2] Georgia A. Hope's needs, which ultimately contributed to Mrs. Hope's suffering from multiple agonizing clinically avoidable acute hypotension, anemia, and dehydration that resulted in Mrs. Hope suffering unnecessary pain, physical and mental deterioration." <u>Id.</u> ¶ 38(k).

Plaintiff also links these factual allegations to the rules and regulations that they purport to violate. <u>See</u> <u>id.</u> ¶¶ 38(a)-(b), (e), (k). Accordingly, taking all well-pleaded allegations as true, Plaintiff sufficiently pleads that Fair Acres violated the FNHRA and OBRA regulations. However, the occurrence of a violation, standing alone, is not enough for <u>Monell</u> liability; the question is whether that violation is part of a municipal policy or custom.

"There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby

---

[2]    Although the Complaint indicates that Ms. Hope currently resides at 931 Burnside Road, Sharon Hill, PA 19079, Compl. ¶ 2, the Complaint later refers to Ms. Hope as the "Plaintiff decedent," <u>id.</u> ¶¶ 37, 41, 46. Plaintiff's counsel indicated that Ms. Hope is indeed alive.

rendering the entity liable under § 1983." Natale v. Camden Cty.
Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).

First, and most straightforwardly, a policy or custom
may be inferred from the acts or omissions of an officer-
employee where "the appropriate officer or entity promulgates a
generally applicable statement of policy and the subsequent act
complained of is simply an implementation of that policy." Id.
at 584 (quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520
U.S. 397, 417 (1997)).

Here, Plaintiff does not allege the existence of a
policymaking officer, facts from which the Court can infer a
statement of policy promulgated by that officer, or facts from
which the Court can infer that Plaintiff's injuries resulted
from a mere implementation of that policy. Because these
essential components are missing, Plaintiff fails to state a
claim under this first theory of Monell liability.

Second, a policy or custom may be inferred where "no
rule has been announced as policy but federal law has been
violated by an act of the policymaker itself." Id. at 584
(quoting Bryan Cty., 520 U.S. at 417-18). "In this situation,
the choice of policy and its implementation are one, and the
first or only action will suffice to ground municipal liability
simply because it is the very policymaker who is acting." Brown,
520 U.S. at 418.

Here, Plaintiff has pleaded facts indicating that Fair Acres violated federal law by failing to adhere to the applicable statutory and regulatory rules. However, as previously discussed, Plaintiff fails to connect these acts or omissions to "the policymaker itself." "'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." Canton v. Harris, 489 U.S. 378, 389 (1989) (alteration in original) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion)). Because Plaintiff fails to identify the policymaker, Plaintiff has failed to sufficiently allege the existence of a policy or custom to plead a Monell claim under this second theory.

Third, a policy or custom may be inferred where "the policymaker has failed to act affirmatively at all," but "the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584 (quoting Bryan Cty., 520 U.S. at 417-18).

Here, Plaintiff contends, in part, that her § 1983 claim is based on a "failure-to-train" theory of liability, which would fall within this third approach. Pl.'s Opp'n 12-13.

16

According to Plaintiff, Fair Acres failed to train its employees, which amounted to a violation of the FNHRA. See, e.g., Compl. ¶ 37(k). Based on representations by Plaintiff's counsel during the hearing on Fair Acres' motion, it appears that Plaintiff intends to argue that the FNHRA violation, in turn, constituted a policy or custom. Plaintiff's claim on this basis, however, does not survive Fair Acres' motion to dismiss.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 60 (2011). A failure to train or supervise "must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" Id. at 61 (quoting Harris, 489 U.S. at 388); see also Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality--a 'policy' as defined by our prior cases--can a city be liable for such a failure under § 1983." Harris, 489 U.S. at 389.

Under a failure-to-train or failure-to-supervise theory, the plaintiff must ordinarily show a "pattern of similar constitutional violations by untrained employees." Thomas v. Cumberland Cty., 749 F.3d 217, 223 (3d Cir. 2014) (quoting

Connick, 563 U.S. at 62). Here, Plaintiff's allegations refer only to her own injuries and personal experience at Fair Acres. Accordingly, Plaintiff has not pleaded facts from which the Court could infer a "pattern of similar constitutional violations." See Lawson v. City of Coatesville, 42 F. Supp. 3d 664, 680 (E.D. Pa. 2014). Therefore, Plaintiff's claim would have to proceed on a theory of "single-incident" liability.

Sometimes "the need for training 'can be said to be so obvious that failure to do so could properly be characterized as deliberate indifference to constitutional rights' even without a pattern of constitutional violations." Thomas, 749 F.3d at 223 (quoting Harris, 489 U.S. at 390 n.10). While "it is possible to establish deliberate indifference based on a single incident[,] . . . this showing is available in a very narrow range of circumstances." Peters v. Cmty. Educ. Ctrs., Inc., No. 11-850, 2014 WL 981557, at *9 (E.D. Pa. Mar. 13, 2014).

"To find deliberate indifference from a single-incident violation," the risk of injury must be a "highly predictable consequence" of the municipality's failure to train and supervise its officers. Thomas, 749 F.3d at 225 (quoting Connick, 563 U.S. at 63-64). The plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong

choice by an employee will frequently cause deprivation of constitutional rights." Carter, 181 F.3d at 357 (footnote omitted) (citing Walker v. New York City, 974 F.2d 293, 297-98 (2d Cir. 1992)). And "a municipality can only be liable under § 1983 where the failure to train demonstrates a 'deliberate' or 'conscious' choice by the municipality." Doe v. Luzerne County, 660 F.3d 169, 179 (3d Cir. 2011) (quoting Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005)).

Here, Plaintiff alleges that Fair Acres failed "to hire a sufficient number of trained and competent staff." Compl. ¶¶ 12(b), 18(b). Plaintiff also alleges that Fair Acres failed "to properly train employees to deal with nursing home residents who are unable to care for themselves." Id. ¶¶ 12(g), 18(g). Likewise, Plaintiff states that "Defendants continually and repeatedly engaged in negligent conduct, which included . . . repeated failure to hire and train appropriate personnel to monitor, supervise, and/or treat Georgia A. Hope." Id. ¶ 29(c). But these allegations are mere conclusions, which are not entitled to the presumption of truth.

Of course, just as the Supreme Court in Harris concluded that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," Harris, 489 U.S. at 390 n.10, the court here might presume that municipal policymakers know with certainty that

their nursing home employees will be required to aid ailing residents. But Plaintiff has not made any allegations to that end, nor any assertions addressing the remaining elements of a failure-to-train claim. See, e.g., Thomas, 749 F.3d at 223. And, in any event, Plaintiff still fails to identify the municipal policymaker; it is the policymaker's "deliberate" or "conscious" choice, as well as the policymaker's knowledge, that must be shown. Harris, 489 U.S. at 389. Therefore, Plaintiff fails to state a claim under § 1983 based on Fair Acres' alleged violations of the FNHRA, and Plaintiff's § 1983 claim will be dismissed.

D.   Medicare Secondary Payer Act Claim

Fair Acres next moves to dismiss Plaintiff's MSPA claim. Plaintiff asserts that Fair Acres is a "primary plan" that failed to pay Plaintiff's Medicare bills. But Plaintiff fails to plead sufficient facts to state a claim under the MSPA.

A private cause of action is available under the MPSA when a primary payer fails to make required payments. 42 U.S.C. § 1395y(b)(3)(A). A Medicare payment "may not be made . . . with respect to any item or service to the extent that payment has been made or can reasonably be expected to be made" by a primary plan. Id. § 1395y(b)(2)(A). Examples of primary plans include group health plans, worker's compensation laws or plans,

automobile or liability insurance policies (including self-insured plans), or no-fault insurance policies. See id. § 1395y(b)(2)(A)(ii). Regulations promulgated under the MSPA define "self-insured plan" as an "arrangement, oral or written . . . to provide health benefits or medical care or assume legal liability for injury or illness" under which an entity "carries its own risk instead of taking out insurance with a carrier." 42 C.F.R. §§ 411.21, 411.50(b).

Here, Plaintiff's only allegation in the Complaint regarding Fair Acres' "primary plan" status is a conclusion of law: "Defendants and/or its insurer are primary plans under the Act." Compl. ¶ 44. This legal conclusion is not entitled to the presumption of truth, so Plaintiff fails to state a claim under the MSPA.

Plaintiff's MSPA claim also fails because she has not demonstrated Fair Acres' responsibility to pay for any services rendered. The MSPA provides, in relevant part, that

> a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service <u>if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service</u>.

42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added).

21

Fair Acres incorrectly contends that "demonstrated responsibility" can only be established by judgment in a state tort action. See Def.'s Mot. ¶¶ 58-62. Under the statute's plain language, "responsibility" can be "demonstrated" by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii); see also 42 C.F.R. § 411.22(b) (interpreting § 1395y(b)(2)(B)(ii) and describing the ways in which "[a] primary payer's responsibility for payment may be demonstrated"). The thrust of the "demonstrated responsibility" requirement is that the payer's responsibility to pay must be demonstrated as a matter of law.

Fair Acres further argues that "a claim under the MSPA simply does not lie against a defendant whose liability to pay medical costs has yet to be determined." Def.'s Reply 4, ECF No. 7. Fair Acres contends that an MSPA claim must be brought after the defendant is declared responsible for payment. Id. at 5. Plaintiff, on the other hand, suggests that it is this present action that would contemporaneously demonstrate Fair Acres' payment responsibility. Pl.'s Opp'n 16 (stating that "by her complaint, Plaintiff . . . seeks to recover monies paid by Medicare on her behalf from Defendant as a primary payer").

22

The Third Circuit has not addressed the interplay between the time when a defendant's responsibility must be demonstrated and the time when a plaintiff can bring an MSPRA claim. But the Eleventh and Sixth Circuits have held that responsibility must be demonstrated as a condition precedent to bringing an MSPRA claim. Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1309 (11th Cir. 2006) (per curiam); Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund, 656 F.3d 277, 293 (6th Cir. 2011) (stating that "the 'demonstrated responsibility' provision places a condition that must be fulfilled only before primary plans (specifically, tortfeasors) must reimburse Medicare").

In Glover, the Eleventh Circuit held that "an alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated before an [MSPA] private cause of action for failure to reimburse Medicare can correctly be brought." 459 F.3d at 1309 (emphasis in original). The court explained that "[u]ntil Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), Defendants' obligation to reimburse Medicare does not exist under the relevant provisions." Id. The court reasoned that if the alleged tortfeasor's responsibility to pay was not demonstrated before a private MSPA action, "it cannot be said that Defendants have

23

'failed' to provide appropriate reimbursement." Id. Furthermore, if the responsibility to pay were not first and separately demonstrated, "defendants would have no opportunity to reimburse Medicare after responsibility was established but before the [double damages] penalty attached" under the statute's private cause of action." Id.

Here, Plaintiff has failed to show that Fair Acres' responsibility to pay has been demonstrated by any of the means recognized in 42 U.S.C. § 1395y(b)(2)(B)(ii). There has been no determination that Fair Acres was primarily responsible for Plaintiff's Medicare payments, so it cannot be said that Fair Acres has failed to provide appropriate reimbursement. Plaintiff has not satisfied the condition precedent to bringing her MSPA claim.

Thus, because Plaintiff has failed to establish that Fair Acres is a "primary payer" and Fair Acres' responsibility to pay has yet to be demonstrated in any fashion, Plaintiff's MSPA claim must be dismissed.

    E.   UTPCPL Claim

Fair Acres also argues that Plaintiff fails to state a claim for relief under the UTPCPL. Plaintiff alleges that Fair Acres violated the UTPCPL by utilizing "deceptive representations and designations to encourage prospective

patients to utilize the services of the Defendant Simpson House and Roxborough Hospital." Compl. ¶ 49.

First, "Defendant Simpson House and Roxborough Hospital" are not parties to this action, and they are mentioned nowhere else in the Complaint. As Fair Acres points out, "the connection to Simpson House and Roxborough Hospital to the instant matter is unknown." Def.'s Mot. ¶¶ 66-67.

Second, Plaintiff does not state a claim for relief under the UTPCPL. Pennsylvania's UTPCPL is a broad statute that prohibits a variety of misleading or fraudulent corporate acts. 73 Pa. Cons. Stat. §§ 201-1 to 201-3. In order to bring a claim under the UTPCPL, the plaintiff must allege losses that stem primarily from a "personal, family, or household" purpose. Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 240 (3d Cir. 2002); W. Coast Franchising Co. v. WCV Corp., 30 F. Supp. 2d 498, 500 (E.D. Pa. 1998).

Because the loss must occur "as a result" of unlawful conduct under the UTPCPL, "a private plaintiff pursuing a claim under the statute must prove justifiable reliance" on the unlawful conduct, not merely that the wrongful conduct caused plaintiff's injuries. Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008). The plaintiff must also show that she "suffered harm as a result of that reliance." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004).

Here, Plaintiff does not identify the specific UTPCPL provision that forms the basis of her claim. The Complaint contains only a general citation to the statute. See Compl. ¶ 48. Because different provisions of the UTPCPL require that different elements be pleaded, the Court is unable to fully assess the viability of Plaintiff's UTPCPL claim.

But, in any event, Plaintiff does not plead factual content from which the Court could reasonably infer that Fair Acres violated the UTPCPL. Although Plaintiff refers to "deceptive representations and designations" in the Complaint, id. ¶ 49, she does not indicate the type of services deceptively encouraged, nor does she allege that she justifiably relied on these misrepresentations in any way. Therefore, Plaintiff fails to state a claim under the UTPCPL,[3] and the claim must be dismissed.

## V.    LEAVE TO AMEND

Leave to amend shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15. The Court may decline

---

[3]      Defendant also argues that Plaintiff's UTPCPL claim should be dismissed because the statute prohibits a cause of action for the sale of medical services. Def.'s Mot. ¶ 80. Plaintiff attempts to distinguish "physician services," which are not covered by the statute, and "unlawful practices relating to trade, commerce and the type of the type associated with . . . medical enterprises." Pl.'s Opp'n 17. However, the Court need not address this argument where Plaintiff has failed to otherwise state a claim for relief under the statute.

to grant leave where "plaintiff's delay in seeking amendment is undue, made in bad faith, prejudicial to the opposing party, or (the amendment) fails to cure the jurisdictional defect." Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 886 (3d Cir. 1992). Leave to amend may also be denied if amendment would be futile. Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Id.

Here, amendment to Plaintiff's negligence claims would be futile, because Fair Acres is immune from common law negligence claims as a county-owned facility. But there is no indication of futility as to Plaintiff's § 1983, MSPA, and UTPCPL claims. These claims could go forward if Plaintiff adequately pleads a claim for relief. Plaintiff has not previously amended her complaint, and there is no indication of bad faith. Therefore, the Court will grant Plaintiff leave to amend her complaint to cure its deficiencies as to those claims.

## VI.   CONCLUSION

For these reasons, the Court will grant Fair Acres' motion to dismiss. Plaintiff's negligence claims against the county-owned Fair Acres nursing home are barred by the PPSTCA and will be dismissed with prejudice. Plaintiff also fails to

state a claim under § 1983 for FNHRA violations, and fails to
state a claim under the MSPA and UTPCPL. These claims will be
dismissed without prejudice, and the Court will grant Plaintiff
leave to amend. An appropriate order follows.