IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARL LOUIS ROBINSON, as Executor   :    CIVIL ACTION
of the Estate of Georgia A. Hope,   :    NO. 15-06749
                               :
                               :
        Plaintiff,           :
                               :
    v.                       :
                               :
FAIR ACRES GERIATRIC CENTER,      :
et al.                         :
                               :
                               :
        Defendant.         :


M E M O R A N D U M

Eduardo C. Robreno, J.                     March 20, 2020


## I.   INTRODUCTION

Plaintiff Carl Louis Robinson, grandson of the late Georgia Ann Hope, brings this case in a representative capacity as the executor of Ms. Hope's estate ("Plaintiff"). This case involves allegations that Ms. Hope suffered deprivation of her federal statutory rights while a resident of Fair Acres Geriatric Center, a nursing home owned by Delaware County. Plaintiff named as defendants Fair Acres Geriatric Center; Delaware County City Council; William D'Amico, nursing home administrator for Fair Acres; Dr. James Bonner, medical director for Fair Acres; Dr. Franklin Vogel, Jr., DPM, treating podiatrist at Fair Acres;

1

Tracey Dale-Williams, head nurse at Fair Acres; Dr. Walter Lewis, primary care physician at Fair Acres; Teri Farr, director of nursing for Fair Acres; and an unspecified number of John and Jane Does, employees at Fair Acres.

The case has a long factual and procedural history. The case began when the original plaintiff, Ms. Hope,[1] filed her initial complaint against Fair Acres alleging, among other claims, violation of her civil rights under 42 U.S.C. § 1983 and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. ("UTPCPL"). Fair Acres filed a motion to dismiss the initial complaint, and the Court granted the motion with leave to amend the § 1983 and UTPCPL claims.

Plaintiff then filed an amended complaint reasserting the § 1983 claim against Fair Acres and sought leave to join additional defendants including Delaware County Council, William D'Amico, Dr. James Bonner, Dr. Franklin Vogel, and Dr. Walter Lewis. Fair Acres moved to dismiss the amended complaint.

On July 25, 2016, the Court granted Fair Acres' motion to dismiss for failing to state a claim upon which relief could be

---

[1] Ms. Hope died and current plaintiff, Carl Robinson, was appointed as executor of her estate and substituted as the plaintiff in this action.

grant and denied Plaintiff's motion to join the additional

defendants as moot. Plaintiff appealed.

On February 14, 2018, the Third Circuit vacated the Court's

July 25 order and remanded to this Court for adjudication of

Plaintiff's "§ 1983 claim under a failure-to-train theory of

liability." <u>Robinson v. Fair Acres Geriatric Ctr.</u>, 722 F. App'x

194, 200 (3d Cir. 2018).

On August 16, 2019, the Court granted Dr. Lewis' and Dr.

Vogel's motions for summary judgment, finding they were not

state actors, and then dismissed them from the case. ECF No.

116; ECF No. 126. Therefore, the case proceeded to trial on a

failure-to-train theory of liability against defendants Fair

Acres Geriatric Center, Delaware County City Council, William

D'Amico, and Dr. James Bonner ("Defendants").[2]

Following an eight-day jury trial, the jury returned a verdict

in favor of Defendants. At the conclusion of trial, the Court

set a scheduling order for the filing of post-trial motions

directing Plaintiff to file, in support of any post-trial

motions, a memorandum of law "including specific citations to

the record." ECF No. 204 at 2; <u>see also</u> ECF No. 212. Plaintiff

---

[2] Prior to trial, Plaintiff dropped the claim against Tracey Dale-Williams.
Tr. 08/29/19 at 3-4, ECF No. 198; Tr. 09/25/19 at 2:14-18, ECF No. 213. The
Court dismissed Teri Farr finding that she was not a policymaker. Tr.
10/04/19 at 72, ECF No. 220. The remaining defendants proceeded to trial in
their official capacities. Tr. 10/02/19 at 122, ECF No. 218.

brings the current motion, ECF No. 207, and accompanying memorandum of law, ECF No. 223, seeking post-trial relief by raising arguments in a shotgun style approach. Almost universally, the Plaintiff's memorandum of law fails to provide pinpoint citations to the record identifying where the alleged trial errors were made and fails to provide legal support for the arguments now raised. On this basis alone, the motion could be denied. However, for the sake of completeness, the Court will address each of the arguments raised by Plaintiff seriatim.

## II. PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

### a. Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. Pro. 50(a)

Plaintiff argues that he is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). Motions under Rule 50(a) must be brought before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2) ("A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury."). The current motion, brought after the jury returned its verdict, will be denied as untimely.

### b. Renewed Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. Pro. 50(b)

Plaintiff argues that he is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). If

the Court does not grant a motion for judgment as a matter of law under Rule 50(a), the moving party may renew the motion after the jury reaches a verdict. Fed. R. Civ. P. 50(b). Judgment as a matter of law is appropriate if the "[C]ourt finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party. Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law "is an extraordinary remedy when urged by an unsuccessful plaintiff who bore the burden of proof at trail." Link v. Mercedes-Benz of N. Am., Inc., 788 F.2d 918, 921 (3d Cir. 1986). "In order to grant the motion, the district court '"must be able to say that there is insufficient evidence for permitting a different finding."'" Id. (quoting Gatenby v. Altoona Aviation Co., 407 F.2d 443, 446 (3d Cir. 1968)). A renewed motion for judgment as a matter of law brought pursuant to Fed R. Civ. P. 50(b) must be based on the same grounds as a pre-verdict motion for judgment as a matter of law made by the moving party. Fed. R. Civ. P. 50 advisory committee's note to 2006 amendment.

Plaintiff's post-trial motion, ECF No. 207, and supplemental post-trial memorandum, ECF No. 223, fail to point to any pre-verdict motion for judgment as a matter of law pursuant to Rule

50(a). The renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. 50(b) therefore will be denied.[3]

## III. PLAINTIFF'S MOTION FOR A NEW TRIAL

"[E]ven when judgment as a matter of law is inappropriate," a new trial may be granted pursuant to Federal Rule of Civil Procedure 59. Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1017 (3d Cir. 1995) (citing Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3d Cir. 1988)). Rule 59 permits the Court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Although Rule 59 does not enumerate specifics, "[a] court may grant a new trial on the grounds of: (1) improper admission or exclusion of evidence; (2) improper instructions to the jury; (3) misconduct of counsel; (4) newly discovered evidence; or (5) a finding that the jury's verdict is against the weight of the evidence." Davis v. Gen. Accident Ins. Co. of Am., 153 F. Supp. 2d 598, 600 (E.D. Pa. 2001).

---

[3] Additionally, in denying Plaintiff's Rule 50(b) motion, the Court notes that: (1) the evidence shown at trial provided a legally sufficient basis for the jury to find for the Defendants and (2) the Plaintiff makes no showing that the amount of evidence (even including Dr. Mayer's testimony, which the Court reviewed in its entirety) so overwhelmingly favored Plaintiff that reasonable jurors could not have reached a verdict for Defendants. In the Court's view, the evidence clearly supports a finding that all of Ms. Hope's federal rights were met, and that her injuries were the natural and unavoidable result of her poor vascular status and overall health decline due to age—not the result of any statutorily-deficient training regarding infection control by Defendants.

When a party brings a motion for a new trial predicated upon a theory of trial error, the Court must determine "(1) whether an error was in fact made, and (2) 'whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice.'" Prum v. Crisante, 2016 WL 7201233, at *1 n.1 (E.D. Pa. Apr. 29, 2016) (Robreno, J.) (quoting Farra v. Stanley-Bostitch, Inc., 838 F. Supp. 1021, 1026 (E.D. Pa. 1993) (internal citations omitted)). However, "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991). "[T]he purpose of this rule is to ensure that the trial court does not supplant the jury verdict with its own interpretation of the facts." Olefins Trading, Inc. v. Han Yang Chem. Corp., 9 F.3d 282, 290 (3d Cir. 1993).

Further, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Id.

The Plaintiff's motion[4] involves allegations of trial error
which fall into three categories: (1) improper admission or
exclusion of evidence, (2) improper instructions to the jury,
and (3) that the jury's verdict is against the weight of the
evidence. The Plaintiff's motion also argues for a new trial
based on two alleged pretrial errors: (1) the granting of
summary judgment in favor of Drs. Lewis and Vogel; and (2) the
Court's order severing Plaintiff's claim under the Pennsylvania
Unfair Trade Practices and Consumer Protection Law.

### a. Admission and Exclusion of Evidence

Plaintiff argues that the Court made numerous evidentiary-
ruling errors which warrant a new trial. The Court will discuss
each alleged error seriatim.

#### i. *"MIL to Preclude Bradbury Testimony"*

Plaintiff argues that the Court erred and abused its
discretion by failing to grant Plaintiff's "MIL to Preclude
Bradbury." ECF No. 223 at 25. Plaintiff's memorandum does not
cite to anywhere in the record where this "MIL to Preclude
Bradbury" was made, nor does Plaintiff's memorandum provide a

---

[4] Plaintiff's motion is styled as a "Motion for New Trial Pursuant to Fed. R.
Civ. [P.] 59 and 60." ECF No. 207 at 4; ECF No. 223 at 28. However, the Court
finds that Plaintiff's motion and memorandum provide no argument to support
the application of Rule 60. Rather, the appropriate rule for evaluating
Plaintiff's motion for a new trial is Rule 59 and the Court will proceed
accordingly.

single argument for why the Court's alleged denial of Plaintiff's "MIL to Preclude Bradbury" was error. <u>See</u> ECF No. 207; ECF No. 223. While there is no one in the record with the name "Bradbury," the Court assumes that the Plaintiff is referring to Trina Bradburn. Trina Bradburn never testified. Further, if per chance Plaintiff is referring to the note of Dr. Bradburn (Defendant's Exhibit Number 2-109) admitted into evidence, Plaintiff did not object to its publication. <u>See</u> Tr. 09/30/19 at 116-17, ECF No. 216 ("No objection."). Plaintiff's motion will be denied.

### ii. "MIL to Preclude Brady"

Plaintiff argues that the Court erred and abused its discretion by failing to grant Plaintiff's "MIL to Preclude Brady." ECF No. 223 at 25. Plaintiff's memorandum does not cite to anywhere in the record where this motion "MIL to Preclude Brady" was made, nor does Plaintiff's memorandum provide a single argument for why the Court's alleged denial of Plaintiff's "MIL to Preclude Brady" was error. Still, the Court will assume that Plaintiff's mention of "Brady" is referring to Theresa Brady MSN, CRNP, CWS and to Plaintiff's motion, at ECF No. 163, which sought to preclude Ms. Brady's testimony. Theresa Brady never testified. Therefore, Plaintiff's motion regarding "MIL to Preclude Brady" will be denied.

### iii. *"MIL to Preclude Cumulative Testimony"*

Plaintiff argues that the Court erred and abused its discretion by failing to grant Plaintiff's "MIL to Preclude Cumulative Testimony." ECF No. 223 at 25-26. The argument is wholly conclusory. Plaintiff provides no legal support for the argument, and the post-trial motion and memorandum do not cite to anywhere in the record where there was discussion of this "MIL to Preclude Cumulative Testimony." See ECF No. 223; ECF No. 207. However, the Court will assume that Plaintiff is referring to Plaintiff's motion in limine to preclude cumulative testimony of Defendants' experts on causation. ECF No. 145. The motion in limine sought to prevent Ilene Warner-Maron, Ph.D., R.N., and Bruce E. Silver, M.D., from both testifying on the issue of causation on the grounds that their testimony at trial would be cumulative. Id.; see Fed. R. Evid. 403. Dr. Warner-Maron never testified. Therefore, the Court will deny Plaintiff's motion as frivolous.[5]

### iv. *"MIL to Preclude Dr. Silver"*

---

[5] While the Court need not evaluate the merits of its ruling on Plaintiff's motion in limine to determine that the post-trial motion is frivolous because Dr. Warner-Maron never testified, the Court notes that its ruling on the motion in limine was not in error. The Court found that Defendants intended to call Dr. Warner-Maron to testify regarding nursing-care training and Dr. Silver to testify regarding medical-care training. See Tr. 09/25/19 at 17:9-12, ECF No. 213. The Court therefore properly denied the motion in limine because the testimony it sought to exclude was not actually cumulative. See Fed. R. Evid. 403.

Plaintiff argues that the Court erred and abused its discretion in denying Plaintiff's "MIL to Preclude Dr. Silver." See ECF No. 223 at 26.[6] The argument is largely conclusory; however, Plaintiff makes a passing allegation in the memorandum that Dr. Silver, the Defendants' expert, was permitted to testify in areas outside of his expertise to criticize Plaintiff's expert, Dr. Mayer. Id. at 33.

During Defendants' questioning of Dr. Silver, Defendants asked Dr. Silver whether the removal of Ms. Hope's toenail by Dr. Vogel, a consultant podiatrist who treated Ms. Hope at Fair Acres, met the standard of care. Tr. 10/03/19 at 125:5-9, ECF No. 219. Plaintiff objected that "Dr. Silver is not a Podiatrist and should not be able to opine on issues related to Podiatry." Id. at 136:3-6. The Court overruled the objection, finding that Dr. Silver, as a Gerontologist was qualified to "render opinions in the area of the standard of care for medical [staff] and nurses in a nursing home environment" and therefore could appropriately give his opinion on the removal of Ms. Hope's toenail. Id. at 138:13-15.

The Court finds that it did not err in its ruling regarding Dr. Silver because the admitted testimony met Federal Rule of

---

[6] The Court notes that Plaintiff fails to make any argument regarding, or mention of, Dr. Silver in the post-trial motion, ECF No. 207. Plaintiff's first post-trial mention of Dr. Silver is in the supplemental memorandum in support of the motion. ECF No. 223.

Evidence 702's requirements of qualification, reliability, and fit. _See_ Fed. R. Evid. 702; Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). The Court therefore will deny Plaintiff's motion.

Further, even assuming that it was error for the Court to admit Dr. Silver's testimony regarding the toenail, Plaintiff cannot show any resulting prejudice that would warrant a new trial. Plaintiff's own expert Dr. Mayer, a vascular surgeon, was also allowed to testify about the standard of care Ms. Hope received during the toenail removal. _See_ Tr. 10/03/19 at 138:13-15, ECF No. 219; Tr. 10/02/19 at 67, ECF No. 218.

_v. "MIL to Preclude Pre-existing Conditions"_

Plaintiff argues that the Court erred and abused its discretion by failing to grant Plaintiff's "MIL to Preclude Pre-existing Conditions." ECF No. 223 at 25-26. Plaintiff's post-trial memorandum does not cite to anywhere in the record where this "MIL to Preclude Pre-existing Conditions" was made, nor does Plaintiff raise any arguments as to why he believes the Court erred regarding this matter. _See_ ECF No. 207; ECF No. 223. However, the Court will assume that Plaintiff is referring to Plaintiff's motion in limine to preclude Defendants from questions about Ms. Hopes' pre-existing medical conditions and

history of smoking, ECF No. 142, and the oral motion to reconsider the same issue. Tr. 09/25/19 at 8-9, ECF No.213.

At a hearing prior to trial, the Court denied the motion in limine, finding that "Ms. Hope's preexisting conditions and past smoking are highly probative of the [causal] nexus" between the Defendants' alleged failures and Ms. Hope's injuries. Id. at 8:1-4 and 9:17-22. Ms. Hope's preexisting conditions are indeed highly probative of causation. The Court's denial of the motion to preclude evidence about pre-existing conditions was therefore appropriate. See Fed. R. Evid. 402, 403. Plaintiff's post-trial motion regarding Plaintiff's "MIL to Preclude Pre-existing Conditions" will be denied.

*vi. "MIL to Preclude Statement in Exhibit A"*

Plaintiff argues that the Court erred and abused its discretion by denying Plaintiff's "MIL to Preclude Statement in Exhibit A." ECF No. 223 at 26. There is no "Exhibit A," or any exhibit for that matter, attached to any of Plaintiff's post-trial filings. See ECF No. 207; ECF No. 223. Plaintiff's memorandum does not identify what "Exhibit A" is. Because Plaintiff's post-trial motion and memorandum fail to identify

the exhibit Plaintiff seeks to challenge, the motion will be denied.[7] Fed. R. Civ. P. 7(b)(1)(B).

### vii. "MIL to Preclude Warner Testimoony [sic]"

Plaintiff argues that the Court erred and abused its discretion by failing to grant Plaintiff's "MIL to Preclude Warner Testimoony [sic]." ECF No. 223 at 25-26. Plaintiff's post-trial memorandum does not cite to anywhere in the record where this "MIL to Preclude Warner Testimoony [sic]" was made, nor does Plaintiff provide any authority in support of this argument. See ECF No. 223; ECF No. 207. Still, the Court will assume that Plaintiff is referring to Plaintiff's motion in limine to exclude portions of the expert testimony of Ilene Warner-Maron, Ph.D., R.N. ECF No. 141. Dr. Warner-Maron never testified. Therefore, Plaintiff's post-trial motion regarding "MIL to Preclude Warner Testimoony [sic]" will be denied.[8]

### viii. "MIL to Preclude Inappropriate Remark"

---

[7] To the extent Plaintiff's reference to a "MIL to Preclude Statement in Exhibit A" refers to ECF No. 185, Plaintiff's arguments are considered by the Court below in its discussion of Plaintiff's post-trial argument that the Court erred in denying Plaintiff's "MIL to Preclude Inappropriate Remark." See infra Section III(a)(viii).

[8] Further, the Court held that "of course the testimony of Ms. Ilene Warner-Maren [sic] should be limited to nursing practice and should not spill over to the area of Physician treatment or standard of care for Physician treatment." Tr. 09/25/19 at 15:9-13, ECF No. 213. Plaintiff has not made it clear what Plaintiff is concerned about regarding Dr. Warner-Maron.

Plaintiff argues that the Court erred and abused its
discretion by failing to grant Plaintiff's "MIL to Preclude
Inappropriate Remark." ECF No. 223 at 25-26. Plaintiff's post-
trial motion and memorandum make no reference or citation as to
what "inappropriate remark" Plaintiff refers. However, the Court
will assume that Plaintiff is referring to Plaintiff's "Motion
in Limine to Preclude Defendants from Questions about Statements
Made in Exhibit 'A.'" ECF No. 185.

Plaintiff filed the motion seeking to exclude evidence
about a remark made by Plaintiff himself, which was memorialized
in a note written by an unidentified Fair Acres nurse dated
sometime in March of 2014. See Id., Exh. A. The nurse's note
states that Plaintiff told Fair Acres staff that "sometimes
people just need a good ass whooping and maybe they are just
stupid." Id. Plaintiff's motion sought to preclude the
introduction of the note and remark on the grounds that the
nurse's note constituted hearsay and that any references to
Plaintiff's remark therein would be more prejudicial than
probative. Id.; Tr. 09/30/19 at 242-43, ECF No. 216; see Fed. R.
Evid. 802, 403.

Following a hearing on the motion, the Court directed
Defendants to alert the Court if, at some point during trial,
they intended to use the remark or the note. Tr. 09/30/19 at

247, ECF No. 216. Upon alerting the Court, the Court would go to sidebar with counsel for the parties and determine whether Plaintiff had opened the door to allowing the evidence. Id. at 247. Defendants, however, never alerted the Court so that it could hold a sidebar. And while the nurse's note itself was never used in cross-examination of Plaintiff, Defendants did ask him whether he "remember[ed] telling the Nurses why people cannot listen and sometimes people just need a good ass-whooping, and maybe they were just stupid." Tr. 10/01/19 at 112:14-17, ECF No. 217. Plaintiff did not object to this question. See id. at 112-13.

The Court agrees that Defendants should have alerted the Court before questioning Plaintiff regarding his remark. However, because Plaintiff did not object or raise the matter to the Court during trial the objection is waived. Had he done so, the Court could have stricken the remarks or given the jury a curative instruction. Therefore, because the Court finds that Plaintiff failed to object to Defendants' questioning concerning the remark and that its inclusion did not affect a substantial right of Plaintiff, the motion for a new trial on this basis will be denied.[9] Fed. R. Evid. 103; Fed. R. Civ. P. 61.

---

[9] To the extent Plaintiff's post-trial argument for a new trial is that the unidentified nurses' note constituted hearsay, the argument is meritless. The note was not admitted into evidence, nor shown to the jury, nor used in cross examination. Tr. 10/01/19 at 112-13, ECF No. 217.

*ix. "MIL re Health Surveys"*

Plaintiff argues that the Court erred and abused its discretion by "granting in full or substantial part . . . MIL re Health Surveys." ECF No. 223 at 27. The argument, like nearly all of Plaintiff's evidentiary arguments, is wholly conclusory. Plaintiff's motion and memorandum do not point to anywhere on the record where the Court allegedly erred. See ECF No. 207; ECF No. 223. Nor did the memorandum supply any authority supporting Plaintiff's argument. Id. The post-trial filings fail to even identify what "Health Surveys" Plaintiff is referring to. Still, the Court will assume that Plaintiff is referring to the Court's decision regarding Defendants' "Motion in Limine to Exclude any Evidence, Testimony, or Argument Related to Department of Health Surveys." ECF No. 130. The motion concerned deficiency citations issued by the Pennsylvania Department of Health to Fair Acres ("DOH Surveys").

In their motion in limine, Defendants argued that all evidence, testimony, or argument related to any DOH Survey should be precluded as not relevant, inadmissible hearsay, and as unfairly prejudicial with a high risk of misleading the jury and confusing the issues before the Court. See ECF No. 130-1 at 4; Fed. R. Evid. 402, 403.

Prior to trial, the Court held oral argument on the motion. See Tr. 09/25/19 at 23, ECF No. 213. Plaintiff argued that "the point of [the DOH Surveys] [was] to establish notice to the facility of nursing and management practices." Id. at 23:15-16. The parties disputed whether the DOH Surveys related to the issue of training. Id. at 28-29. The Court stated that "if [the DOH Surveys] relate to the training, it seems to me, then, you have your opportunity to both cross-examine and present evidence." Id. at 29:12-14. However, because the parties had not provided the Court with copies of the DOH Surveys Plaintiff sought to rely on, the Court could not rule on the motion in the abstract. Id. at 29. The Court then ordered Plaintiff to "identify specifically what statements in [the DOH Surveys] she intends to offer, and the basis for admissibility" so that the Court could determine the admissibility of each DOH Survey. Id. at 38:8-9. In response, Plaintiff identified two DOH Surveys that Plaintiff believed to be relevant: (1) a DOH Survey dated November 20, 2014, ("Survey Number One"), ECF No. 180; and (2) a DOH Survey dated November 21, 2013, ("Survey Number Two"), ECF No. 181.

At trial, while questioning Dr. Bonner, medical director of Fair Acres, Plaintiff asked Dr. Bonner about the DOH Surveys. Tr. 09/27/19 at 27, ECF No. 215. Defendants objected, arguing that the questioning went to the "pending motion in limine"

18

regarding DOH Surveys. Id. at 26-27. The Court overruled

Defendants' objection, stating that the Court would "let them

question [Dr. Bonner] on those two Surveys, as of cross." Id. at

28:12-13.

Again during trial, Defendants asked the Court to discuss

the pending motion in limine regarding the DOH Surveys. Tr.

09/30/19 at 180:12-14, ECF No. 216. The parties discussed the

contents of both Survey Number One and Survey Number Two, but

the Court ultimately decided not to rule on the motion, choosing

instead to "defer discussion of th[e] matter until later." Id.

at 195:22-23.[10]

The only other mention of the surveys—revealed by the

Court's own review of the record—was during Plaintiff's

questioning of Defendants' expert, Dr. Silver. Tr. 10/04/19 at

50, ECF No. 220. Plaintiff asked Dr. Silver about surveyors' use

of "F-Tags" in surveys. Id. at 50. Dr. Silver answered the

question before Defendants objected to Plaintiff's questioning

by arguing the questioning went "well beyond the scope of

direct." Id. at 52:4-5.  The Court told Defendants "Okay. So,

when [Plaintiff] asks a question, you object, and we will go

---

[10] The Court notes that, as to Survey Number Two, the Court told Plaintiff it
"ha[d] a sense that I should probably admit it" because the survey contained
such trivial information that its admission would likely have no effect on
the jury's decision. Tr. 09/30/19 at 189:1-2, ECF No. 216.

on." Id. at 52:8-9. No further questions regarding the DOH Surveys were asked of Dr. Silver.

Plaintiff has not identified any portion of either Survey Number One or Survey Number Two that Plaintiff tried to admit but the Court excluded nor proffered any question that Plaintiff wanted to propound but was prevented from asking. Therefore, Plaintiff suffered no prejudice. The Court will deny Plaintiff's motion.[11]

### x. "MIL re Negligence"

Plaintiff argues that the Court erred and abused its discretion by "grant[ing] in full or substantial part . . . MIL re Negligence." ECF No. 223 at 27. Plaintiff makes no further explanation regarding this alleged error. See ECF No. 207; ECF No. 223. The Court assumes that Plaintiff is referring to Defendants' "Motion in Limine to Preclude Plaintiff from Offering Any Evidence, Testimony or Argument Related to Negligence." ECF No. 131. Plaintiff's argument lacks merit.

---

[11] The Court further notes that Survey Number Two is only a citation finding that Fair Acres failed to send a piece of paper, documenting an incident between two patients, to the right government agency. ECF No. 181; see Tr. 09/30/19 at 187-88, ECF No. 216. Survey Number Two never concludes whether the incident between two patients actually occurred and therefore it is not relevant to training of medical staff or even to the care that Fair Acres' residents receive. It would therefore not have been error for the Court to exclude it as not relevant to the action. Fed. R. Evid. 402.

Defendants brought the motion due to a concern that Plaintiff would offer testimony concerning the Defendants' breach of the standard of care applicable to medical malpractice and state law actions. Defendants argued that this type of testimony would confuse the jury into thinking that the case was a medical malpractice case. See Id. at 7-8. Consistent with this understanding, the Court ultimately instructed the jury regarding the standard of care in a § 1983 case and refused to instruct the jury on the standard of care for negligence in medical malpractice cases. Instructing the jury on the standard of care in medical malpractice cases would have confused the jury as to what standard of care to apply. See Fed. R. Evid. 403. The Plaintiff's motion will be denied.

### xi. "MIL to Preclude Plaintiff Testimony"

Plaintiff argues that the Court erred and abused its discretion by "grant[ing] in full or substantial part . . . MIL to Preclude Plaintiff Testimony." ECF No. 223 at 27. The post-trial motion and memorandum provide no further explanation of what Plaintiff is referring to. See ECF No. 207; ECF No. 223. The Court assumes that Plaintiff is referring to Defendants' "Motion in Limine to Exclude Plaintiff's Testimony." ECF No. 129.

Plaintiff's argument misses the mark. The Court did not grant the Defendants' motion "in full or substantial part." ECF No. 223 at 27. Rather, the Court ordered the motion be granted in part and denied in part. Specifically, the motion was "[d]enied to the extent that [Plaintiff] will be allowed to testify as to perceptions; granted to the extent that [Plaintiff] will not be allowed to testify as to an opinion, either medical or failure to train." Tr. 09/25/19 at 46:5-8, ECF No. 213. This ruling was appropriate because Plaintiff is not qualified to offer opinions based on scientific, technical, or other specialized knowledge about medical care or the failure to train medical professionals. Fed. R. Evid. 701. The post-trial motion on this basis will be denied.

### xii. "MIL to Preclude Photographs"

Plaintiff argues that the Court erred and abused its discretion by "grant[ing] in full or substantial part . . . MIL to Preclude Photographs." ECF No. 223 at 27. Plaintiff makes no further explanation of the argument. See ECF No. 207; ECF No. 207. The Court assumes that Plaintiff is referring to Defendants' "Motion in Limine to Preclude Photographs of Ms. Hope's Foot and Amputation Site." ECF No. 128.

Because the Court did not grant Defendants' motion in full or in substantial part, the Plaintiff's argument also misses the

mark. In fact, the Court rejected Defendants' arguments that the photographs were not relevant and that the probative value of the photographs was substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 401, 402, 403. Defendants also argued that certain of the photographs should be excluded to the extent they were needlessly cumulative. ECF. No 128 at 5; Tr. 09/25/19 at 21, ECF No. 213. Plaintiff agreed that the number of photographs could be reduced, and that Plaintiff was "happy to" remove any duplicative photos. Id. at 18:22, 19:8-9. Plaintiff requested only that "the number of photographs show[] the sequence, or photographic chronology of the wound." Id. at 18:22-24. The Court agreed, stating that "to the extent that [the photographs] show some progression, then they wouldn't be cumulative." Id. at 22:20-21.[12] Therefore, the photographs showing the progression were admitted and shown to the jury. Plaintiff's motion will be denied.

*xiii. Evidentiary Rulings Regarding Dr. Mayer*

Plaintiff argues that the Court's various evidentiary rulings regarding Plaintiff's expert, Dr. David A. Mayer, M.D.,

---

[12] Further, the Plaintiff's post-trial motion and memorandum do not mention any photograph that Plaintiff was thereafter prevented from using. The Court's own review of the record did not identify any later trial rulings regarding photographs adverse to Plaintiff.

F.I.C.S, who testified at trial by way of pre-recorded video deposition, constituted error warranting a new trial.

Plaintiff argues that the Court erred by granting in part Defendants' motions in limine concerning Dr. Mayer's testimony. The Court's order permitted Dr. Mayer to testify as to "general surgery, vascular surgery, and bariatric surgery;" to "the standard of care and the medical treatment Ms. Hope personally received from physicians and nurses;" and to "the medical causation of Ms. Hope's injuries." ECF No. 182. However, Plaintiff's current motion seems to challenge certain limitations placed on Dr. Mayer's testimony by the Court's order. See ECF No. 223 at 26-27. Namely, Plaintiff challenges the Court's finding that Dr. Mayer could not: (1) provide expert testimony as to "training policy and procedure for a Pennsylvania skilled nursing facility;" (2) provide expert testimony as to "the quality of nursing education or training at Fair Acres Geriatric Center;" and (3) "testify that any treatment constituted 'abuse' or 'neglect.'" ECF No. 182; see ECF No. 223 at 26-27.

Additionally, Plaintiff argues that (4) the Court erred by denying Plaintiff's motion to exclude evidence about a fraud investigation by the New York Attorney General into a previous employer of Dr. Mayer's. See Id. at 27.

24

*1. Preclusion of expert testimony by Dr. Mayer*

*as to nursing home administration and*

*nursing education and training*

As to Plaintiff's first two arguments, that Dr. Mayer should have been allowed provide expert testimony on the training policy and procedures for a Pennsylvania skilled nursing facility and on the quality of nursing education or training at Fair Acres, the Court will deny the motion because Dr. Mayer is not qualified to testify and his opinion on these issues is unreliable.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Third Circuit has "explained that Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In

re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741–743 (3d Cir. 1994) and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)).

Qualification "refers to the requirement that the witness possess specialized expertise," and the Third Circuit has interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Schneider, 320 F.3d at 404 (quoting Paoli, 35 F.3d at 741).

For an expert's opinion to be reliable, the expert must have "good grounds" for his belief, which means the "opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" Paoli, 35 F.3d at 742 (quoting Daubert, 509 U.S. at 590). The Paoli court provided factors that, in light of Supreme Court and Third Circuit precedent, "a district court should take into account in evaluating whether a particular scientific methodology is reliable." Id. These factors are:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Id. at 743 n.8 (citing Daubert, 509 U.S. at 950 and United States v. Downing, 753 F.2d 1224 (3d Cir. 1985)).

As to Rule 702's fit requirement, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404. Accordingly, "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Daubert, 509 U.S. at 591-92.

First, Dr. Mayer is not qualified to give expert opinion on nursing home administration or nursing education. Before trial, the Court heard argument on Dr. Mayer's qualification on these issues and found Dr. Mayer to be unqualified. Tr. 09/26/19 at 17-20. Plaintiff made an oral motion for reconsideration. Tr. 09/27/19 at 71-72, ECF No. 214. The Court afforded Plaintiff the opportunity to submit a written request that Dr. Mayer possessed the skills, education, and professional background necessary to testify by way of opinion. Id. at 72. Plaintiff failed to provide any further evidence to the Court. Tr. 09/30/19 at 127-29, ECF No. 216. Still, the Court allowed Plaintiff to make an oral argument on behalf of the qualification of Dr. Mayer. Id. The only evidence Plaintiff provided was that "Dr. Mayer has 15 years of working in a nursing home." Id. at 127:25. The Court held that "in the absence of more than that," Dr. Mayer could

not testify as to nursing home administration and nursing education. Id. at 128.

Second, even if the Court were to find Dr. Mayer qualified, his opinion regarding administration, training, and education procedures for a skilled nursing home facility and its employees is not reliable. Fed. R. Evid. 702. Both Dr. Mayer's additional and supplemental reports, see ECF No. 151, Exh. A & B, focus almost entirely on the quality of the individual care Ms. Hope received. Expert opinion regarding individual medical care does not reliably prove anything regarding training efforts at a facility-wide level. At the very least, Dr. Mayer's report fails to present a scientifically reliable method for connecting the information relied upon to a conclusion that could support an opinion on policy and training. The closest Dr. Mayer's reports came to discussing the training of Fair Acres staff is the following:

> Such observations [regarding Ms. Hope's individual medical care] are not isolated events. My review of Fair Acres' compendium of citations, which included some 30 deficiencies in patient care (putting the facility in the 97th percentile for deficiencies among similar providers) for the calendar year 2014 alone, showed similar egregious violations of residents' right to fundamental medical care.

ECF No. 137, Exh. C at 3.

Dr. Mayer has provided no "good grounds" for his opinion regarding the adequacy of training and supervision at Fair Acres. The "Materials Reviewed" in his reports do not include any literature on the administration of nursing care facilities or on the relationship between training and patients' health outcomes. He identifies no "method [or] procedure of science," but rather concludes after reviewing the 30 deficiencies in patient care that there had been "similar egregious violations of residents' right to fundamental medical care." Id. The opinion is therefore not reliable.[13]

Finally, even if the Court's ruling on Dr. Mayer's qualification, reliability, and fit was in error, the error does not justify a new trial. Plaintiff's counsel told the Court she "believe[d] that the failures and evidence of deliberate indifference are so obvious . . . . [t]hat [Plaintiff] wouldn't even need an Expert." Tr. 09/25/19 at 95:5-20, ECF No. 213. The

---

[13] With the entire trial record now in front of the Court for review, it is even more clear that Dr. Mayer's reliance on the deficiency citations to form his opinion regarding facility-wide training, administration, and education of Fair Acres and its staff does not meet Rule 702's reliability requirement. Plaintiff's own argument at trial, that only two of the DOH Surveys were relevant to the case, supports the conclusion that Dr. Mayer's opinion on nursing home administration and staff training is unreliable. The 30 deficiency citations relied on by Dr. Mayer are the same "DOH Surveys" discussed above. See supra Section III(a)(ix). At trial, when the Court directed Plaintiff to identify any DOH Surveys that Plaintiff believed were relevant to the case, Plaintiff only identified two as being relevant to the case. Tr. 10/02/19 at 19, ECF No. 218. Plaintiff cannot argue now that Dr. Mayer's opinion regarding nursing home administration and training meet Rule 702's reliability requirement when Dr. Mayer's own reports state that the opinion is based almost entirely (twenty-eight of the thirty DOH Surveys) on information that Plaintiff believes is not relevant to the case.

exclusion of Dr. Mayer's expert opinion therefore does not warrant a new trial. Fed. R. Civ. P. 61. Plaintiff's motion will be denied.

### 2. Preclusion of testimony by Dr. Mayer that any treatment constituted "abuse" or "neglect"

Plaintiff argues that the Court's preclusion of testimony by Dr. Mayer that treatment constituted "abuse" or "neglect" warrants a new trial. See ECF No. 223 at 26-27. Plaintiff's motion and memorandum provide no legal authority in support of Plaintiff's position that the Court's ruling on this matter justifies a new trial. See ECF No. 207; ECF No. 223. The Court's order that Dr. Mayer not testify that a treatment constituted "abuse" or "neglect" helped prevent potential jury confusion as to the applicable legal standard in this case and was therefore reasonably excluded. See Fed. R. Evid. 403. This case was about failure to train under § 1983—not "abuse" or "neglect" by Defendants. Plaintiff's motion for a new trial based on the Court's order that Dr. Mayer not testify that any treatment constituted "abuse" or "neglect" will be denied.[14]

---

[14] Further, even if it were error to order the exclusion of Dr. Mayer's testimony that included those legal standards, Plaintiff did not suffer prejudice warranting a new trial. Testimony of Dr. Mayer regarding "abuse" and "neglect" still made its way to the jury, see Tr. 10/02/19 at 75:15-19, ECF No. 218 ("There was evidence of malnutrition, failure to feed Ms. Hope,

*3. Denial of Plaintiff's motion to exclude*

*evidence of the fraud investigation*

Plaintiff argues that the Court erred by denying
Plaintiff's motion to exclude testimony by Dr. Mayer regarding a
fraud investigation by the New York Attorney General into Dr.
Mayer's past employer, Park Avenue Stem Cell. See Tr. 10/02/19
at 42, ECF No. 218. The basis for Plaintiff's objection during
trial was that the testimony was not relevant and was
prejudicial. See id. at 38. The Court denied Plaintiff's motion
as untimely. Id. at 41. Dr. Mayer's testimony was presented by
way of a pre-recorded video deposition. Prior to trial, the
Court allowed each party to designate which portions of the
video testimony they wanted shown to the jury. ECF No. 182.
Defendants designated the testimony regarding the fraud
investigation to be shown to the jury. See ECF No. 184.
Plaintiff did not object to the Defendants' designation of the
fraud testimony. See Tr. 9/30/19 at 129-30, ECF No. 216. The
Court then ordered that, prior to playing the video deposition
at trial, the Plaintiff's "bibliographer, in conjunction with
both parties," prepare a video file "edited in accordance with

_____

failure to ensure that she had adequate fluids and didn't become dehydrated,
a failure to insert a feeding tube in a timely manner, which again would be
evidence of abuse and neglect of a patient."), 76:10-12 (testifying that Ms.
Hope's pressure sore was "considered [a] never event[] in a nursing home . .
. th[at] should never happen absent abuse and neglect of the patient").

the parties' designations and in accordance with the objections

[to designations that were] sustained." ECF No. 190 at 3. The

edited video contained the fraud testimony. Plaintiff not having

objected to the designation prior to trial, as directed by the

Court, the objection was untimely. The motion will be denied.

### b. Alleged Improper Instructions to the Jury

Plaintiff argues that the verdict is the product of errors

of law based on the Court's alleged improper instructions to the

jury. Plaintiff's arguments regarding alleged jury-instruction

error fall into two categories: (1) failure to charge the jury

with specific statutory and regulatory language, and (2) failure

to charge the jury on both failure to train and failure to

supervise.

First, as to the alleged failure to charge the jury with

specific statutory and regulatory language, Plaintiff argues:

> The verdict is the product of errors of law
> and, inadequacy, and incompleteness of the Court's
> charge, specifically on the applicability of the
> Federal Nursing Home Reform Amendments to the case
> at hand, failure to charge the jury on the federal
> and state laws and regulations applicable to
> nursing homes and related to the care of
> Plaintiff[']s decedent including abuse and neglect.

ECF No. 223 at 28-29 ¶ 3.

The Court disagrees. The Court finds that it adequately

instructed the jury of Ms. Hope's applicable federal rights. <u>See</u>

Tr. 10/04/19 at 119:6-11, ECF No. 220 ("In this case, the right implicated is the right of a nursing home resident to have sufficiently trained Medical and Nursing Staff provide medical, nursing, and related services, including nutrition and hydration, in a manner promoting quality of life, and to maintain the highest practicable physical, mental, and psychosocial wellbeing of residents."); See also Grammer v. John J. Kane Regional Centers-Glen Hazel, 570 F.3d 520 (3d Cir. 2009).[15]

Second, as to the alleged error by the Court in failing to charge the jury on both failure to train and failure to supervise, Plaintiff argues:

> The verdict is the product of errors of law
> and, inadequacy, and incompleteness of the Court's
> charge, specifically . . . the failure of the Trial
> Court to charge the jury on Failure to Train and
> Supervise which was in clear contravention of the
> Mandate and Order of the Third Circuit Court of
> Appeal of April 4, 2017 that did include failure to
> supervise as applicable to this case.

ECF No. 223 at 28-29 ¶ 3.

The Court disagrees. The Court finds that it adequately instructed the jury regarding failure to train. See Tr. 10/04/19

---

[15] To the extent Plaintiff argues that it was error for the Court not to read each regulation aloud as part of the jury instructions, see ECF No. 207 at 12-16, Plaintiff's argument is mistaken. Throughout the course of litigation, Plaintiff's counsel has failed to recognize the difference between a federal right under § 1983 and a statute or regulation. See Grammer, 570 F.3d at 525 ("[A] Plaintiff must assert the violation of a federal right—not merely a violation of a federal law—to seek redress.").

at 119-23, ECF No. 220. The Court's instruction regarding
failure to train, which did not mention a failure to
"supervise," does not warrant a new trial.

First, the instruction is consistent with the Third
Circuit's mandate in this case that Hope "sufficiently pleaded a
§ 1983 claim under a <u>failure-to-train</u> theory of liability."
<u>Robinson v. Fair Acres Geriatric Ctr.</u>, 722 F. App'x 194, 200 (3d
Cir. 2018) (emphasis added).[16] At a status and scheduling
conference with the parties following remand from the Third
Circuit, this Court stated that "the Third Circuit . . .
returned the case for further proceedings concerning the failure

---

[16] Although the Third Circuit opinion mentions the word "supervise" twice, it
is clear that the opinion focused on a failure-to-train theory. The first
mention of the word "supervise" is included only in a recitation of
Plaintiff's complaint. 722 F. App's at 199 ("Hope alleged Fair Acres 'failed
. . . to properly supervise [staff].'"). The second mention of the word is as
follows:

> Hope did, however, plead adequate facts to support her
> contention that Fair Acres demonstrated deliberate
> indifference through its failure to properly train and
> supervise its staff. In order for a failure-to-train claim to
> support <u>Monell</u> liability, a plaintiff must show "that in
> light of the duties assigned to [the relevant employees,] the
> need for more or different training is so obvious, and the
> inadequacy so likely to result in the violation of
> constitutional rights, that the policymakers of the
> [municipality] can reasonably be said to have been
> deliberately indifferent to the need."

722 F. App'x at 199 (alterations in original) (quoting <u>City of Canton v.
Harris</u>, 489 U.S. 378, 390 (1989)).
  The word supervision is mentioned only as an introduction to the Third
Circuit's discussion of Plaintiff's surviving claim for <u>failure-to-train</u> §
1983 liability. In fact, the Third Circuit held that Plaintiff's claims
survived the motion-to-dismiss stage because of Plaintiff's evidence
"regarding the number and character of deficiency citations issued to Fair
Acres" which  the Third Circuit held "sufficiently pleaded a § 1983 claim
under a failure-to-train theory of liability." 722 F. App'x at 199-200 ("Hope
alleged only generally that <u>training</u> was inadequate, the inadequacy of
<u>training</u> can plausibly be inferred from Hope's allegations regarding . . .
deficiency citations." (emphases added)).

to train. . . . And so far as I can, those claims are still viable or present here. And we'll see which ones the plaintiff wants to proceed on." Tr. 08/01/19 at 4:17-22, ECF No. 106. Plaintiff made no objection that a failure to "supervise" theory still remained.

Second, the Court notes that in its August 30, 2019, order it confirmed that "Plaintiff brings a § 1983 claim for violations of the Federal Nursing Home Reform Amendments ('FNHRA') against all remaining defendants under a failure-to-train theory of liability." ECF No. 126 at 2, n.1. Plaintiff made no objection following the order until Plaintiff's last-minute objections to the Court's proposed jury instructions. At that time, the Court granted Plaintiff time to provide support for the proposition that the word "supervision" needed to be included in the jury instructions. Plaintiff did not submit any support for this argument. Plaintiff's motion will be denied.

### c. Alleged Jury Verdict Against the Weight of the Evidence

Plaintiff argues that the verdict is contrary to the weight of the evidence. Because the jury's verdict in this case did not result in a miscarriage of justice nor did it shock the conscience, this Court will deny Plaintiff's motion for a new trial based on the weight of the evidence.

Plaintiff argues:

> The verdict is contrary to the weight of the evidence which shows that the Plaintiff was not provided, based on the comprehensive assessment of a resident and consistent with the resident's needs and choices, the necessary care and services to ensure that a resident's abilities in activities of daily living did not diminish unless circumstances of the individual's clinical condition demonstrate that such diminution and skin breakdown was unavoidable. She was entitled to these services as a Medicaid/Medicare recipient as a matter of law.

ECF No. 223 at 28 ¶ 1; ECF No. 207 at 4.

The Court disagrees. The Court finds that the evidence supports a jury finding that Ms. Hope received all care and services to which she had a federal right, and that the injuries she suffered were an unavoidable result of her vascular condition and advanced age unrelated to any infection control measures on the part of Defendants. Testimony was heard from Dr. Bonner, medical director at fair acres; Dr. Lewis, Ms. Hope's primary care physician while at Fair Acres; Mr. D'Amico, the Nursing Home Administrator of Fair Acres; Nurse Tracey Dale-Williams; Nurse Patricia Paolino; and Plaintiff, Carl Robinson. Expert testimony was also heard from Plaintiff's expert Dr. Mayer and from Defendants' expert Dr. Silver. At trial, Defendants offered evidence of Ms. Hope's diagnoses at the time of admission to Fair Acres. See ECF No. 225 at 13. Defendants also presented evidence of the unavoidable progression of Ms. Hope's injuries through, among other things, the results of a

Doppler ultrasound, the treatment records regarding dry gangrene, and Dr. Silver's expert testimony that the injuries were unavoidable. See ECF No. 225 at 10-16; Tr. 10/03/19, ECF No. 219.

Plaintiff argues:

> The verdict is contrary to the weight of the evidence which shows that the Plaintiff was not provided the necessary services to maintain good nutrition, grooming, and personal and oral hygiene, and the evidence overwhelmingly established that the defendants contributed to injury of the death of Plaintiff's Decedent by failing to train and supervise the Defendants and their staff on the requirements of care.

ECF No. 223 at 28, ¶ 2; ECF No. 207 at 4.

The Court disagrees. The Court finds that the evidence supports a jury finding that Ms. Hope received all care and services to which she had a federal right and that Plaintiff was provided necessary services to maintain good nutrition, grooming, and personal oral hygiene. For example, Defendants provided evidence that Ms. Hope's declining nutrition was due to Mr. Robinson's refusal to put a feeding tube in Ms. Hope at an appropriate time, not due to any failure on Defendants' part. See, e.g., Test. of Dr. Lewis, Tr. 09/30/19 at 122, ECF No. 216.

Because the Court finds that Plaintiff failed to make a showing that, on the weight of the evidence, the jury's verdict resulted in a miscarriage of justice, the motion will be denied.

See <u>Williamson v. Consol. Rail Corp.</u>, 926 F.2d 1344, 1353 (3d Cir. 1991).

### d. Plaintiff's Additional Arguments for a New Trial

Plaintiff's post-trial motion and accompanying memorandum raise two additional arguments on which Plaintiff believes the Court should grant a new trial: (1) the Court's dismissal of Dr. Lewis and Dr. Vogel and (2) the severing of the Plaintiff's Pennsylvania Unfair Trade Practices and Consumer Protection Law claim.

### i. Dismissal of Dr. Lewis and Dr. Vogel

Plaintiff makes an entirely conclusory argument for a new trial based on alleged error by the Court in dismissing Dr. Lewis, a consultant primary care physician who treated Ms. Hope at Fair Acres, and Dr. Vogel, a consultant podiatrist who treated Ms. Hope at Fair Acres, from the case. Plaintiff's motion and memorandum are wholly conclusory and provide no basis on which Plaintiff believes the Court erred in dismissing Dr. Lewis and Dr. Vogel. <u>See</u> ECF No. 207; ECF No. 223. Plaintiff simply asserts that (1) the Court "erred as a matter of law and abused its discretion in denying . . . Plaintiff's Objections and Answer to Defendants' Motion for Summary Judgment (ECF No. 126) which did prejudice the Plaintiff"; and (2) the Court "erred as a matter of law and abused its discretion in

38

dismissing Defendants, Drs. Lewis and Vogel, from the case which did prejudice the Plaintiff." ECF No. 207 at 11 ¶¶ 9-10; ECF No. 223 at 25 (identical language). The Court will construe the motion as a motion for reconsideration of the Court's grant of summary judgment in favor of Drs. Lewis and Vogel on the § 1983 claim.[17]

Pursuant to Local Rule 7.1(g), "[m]otions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned, other than those governed by Federal Rule of Civil Procedure 59(e)." Federal Rule of Civil Procedure 59(e) concerns motions to amend or alter a judgment and thus does not apply to interlocutory decisions. See Bausch & Lomb Inc. v. Moria S.A., 222 F. Supp. 2d 616, 669 (E.D. Pa. 2002). Because partial summary judgment

---

[17] On August 16, 2019, this Court ruled on motions for summary judgment by Drs. Lewis and Vogel on the two claims raised against them: (1) the § 1983 claim and (2) the survival action under Pennsylvania law. See ECF No. 116 at 2, n.1. The Court granted the motion for summary judgment in favor of Drs. Lewis and Vogel on the § 1983 claim but denied their motion as to the survival action claim because the motion's only argument for dismissal of the survival action was a statute of limitations argument and the Court found the claims were timely. Id. Subsequently, at a hearing held August 29, 2019, Plaintiff agreed that, following the Court's dismissal of the § 1983 claim on summary judgment, no other claims remained against Drs. Lewis and Vogel. See Tr. 08/29/19 at 3-4, ECF No. 198; see also Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011) ("[S]urvival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death."). Thereafter, by order dated August 30, 2019, the Court dismissed Drs. Lewis and Vogel on the basis that the Court had already granted summary judgment in their favor on the § 1983 claim and that no other claims remained against them. ECF No. 126. The August 30, 2019, order did not make any ruling against Plaintiff. See ECF No. 126. Thus, the Court will construe Plaintiff's motion as a motion for reconsideration of the Court's August 16, 2019, order granting summary judgment for Drs. Lewis and Vogel on the § 1983 claim. ECF No. 116.

orders are interlocutory decisions, a party against whom summary judgment was entered against as to less than all claims against all parties may not seek relief under Rule 59(e). <u>See</u> Fed. R. Civ. P. 54(b); <u>Berckeley Inv. Group, Ltd. v. Colkitt</u>, 259 F.3d 135, 143-44 (3d Cir. 2001). The Court's dismissal of Drs. Lewis and Vogel was an interlocutory decision, and therefore Local Rule 7.1(g)'s fourteen-day time limit applies to a reconsideration motion regarding their dismissal. Thus, Plaintiff's motion for reconsideration of the Court's grant of partial summary judgment and resulting dismissal of Dr. Lewis and Dr. Vogel will be denied as an untimely.[18]

Even if Plaintiff's motion for reconsideration were timely, the motion would be denied for lack of merit. A Motion for Reconsideration will be granted when the party seeking reconsideration establishes "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [issued its previous decision]; or (3) the need to correct a clear error of law or fact or prevent manifest injustice." <u>Max's Seafood Café v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999); <u>N. River Ins. Co.</u>

---

[18] Plaintiff's instant motion for reconsideration of their dismissal was filed on October 15, 2019, more than 14 days after both the Court's granting of summary judgment in favor of Drs. Lewis and Vogel on August 16, 2019, ECF No. 116, and the Court's order dismissing Drs. Lewis and Vogel on August 30, 2019. ECF No. 126.

<u>v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995).

Plaintiff raises no arguments that support reconsideration on any of those bases. The Court granted summary judgment on the § 1983 claim in favor of Drs. Lewis and Vogel upon a finding that Drs. Lewis and Vogel were not state actors for purposes of § 1983 liability. ECF No. 116 at 2-5, n.1. Plaintiff cites no authority for reconsideration of that conclusion.[19] The Court finds that its reasoning in dismissing Drs. Lewis and Vogel is still correct. For the reasons stated, Plaintiff's motion for reconsideration of the Court's dismissal of Drs. Lewis and Vogel will be denied.

> ii. *Severing of Pennsylvania Unfair Trade Practices and Consumer Protection Law Claim*

Plaintiff's motion makes a wholly conclusory argument for a new trial based upon the Court's severing of the Plaintiff's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 <u>et seq.</u> ("UTPCPL"). <u>See</u> ECF No. 207 at 17 ¶ 18, 18 ¶ 21. Plaintiff's memorandum in support of the motion makes no mention of the issue. <u>See</u> ECF No. 223. The

---

[19] Because the Court is denying Plaintiff's motion for reconsideration of Plaintiff's § 1983 claim against Drs. Lewis and Vogel, it need not consider the survival action against them. <u>See Sullivan v. Warminster Twp.</u>, 756 F. Supp. 2d 687, 707 (E.D. Pa. 2011) ("[S]urvival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death.").

Court finds that Plaintiff's post-trial motion regarding severance of the UTPCPL claim is meritless.

On August 20, 2019—prior to severing the UTPCPL claim—the Court issued a rule to show cause, returnable at a hearing to be held August 29, 2019, as to why the claim should not be severed. ECF No. 117 at 1-2. At the hearing, Plaintiff made no argument that the claim should not be severed. See Tr. 08/29/19, ECF No. 198. The Court then severed the UTPCPL claim by order dated August 30, 2019. ECF No. 126 at 4. Plaintiff made no motion for reconsideration of the order severing the UTPCPL claim until October 14, 2019, when Plaintiff filed the post-trial motion currently before the Court. ECF No. 207. Therefore, the Court will deny Plaintiff's motion because it is an untimely motion for reconsideration. See E.D. Pa. Loc. R. Civ. P. 7.1(g).[20]

---

[20] Even if the motion were not untimely, Plaintiff's argument lacks any support.

Pursuant to Federal Rule of Civil Procedure 21, the Court may "sever any claim against a party." Fed. R. Civ. P. 21. A district court has broad discretion in deciding whether to sever a claim. See Grigsby v. Kane, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003) (observing that a district court has "virtually unfettered discretion in determining whether or not severance is appropriate"). When a claim is severed pursuant to Rule 21, it "become[s] [an] entirely independent action[] to be tried, and judgment rendered thereon, independently." Kimmel v. Cavalry Portfolio Servs., LLC, 747 F. Supp. 2d 427, 434-35 (E.D. Pa. 2010) (internal quotation marks and citations omitted). In other words, "[s]everance pursuant to Rule 21 essentially creates a separate case, the disposition of which is final and appealable." Graudins v. Retro Fitness, LLC, 921 F. Supp. 2d 456, 468 (E.D. Pa. 2013).

Plaintiff raises no arguments against the Court's prior conclusion that the UTPCPL claim "involves a separate issue, separate evidence, and separate legal standard than the § 1983 claim." ECF No. 126 at 4, n.2 ("For the Court's convenience, to avoid prejudice to Defendants, and to minimize confusion, the Court will consider the UTPCPL claim separately, taking the motion for summary judgment on this issue under advisement. Therefore, this claim will not proceed to trial with the § 1983 claim on September 25,

## IV.   CONCLUSION

For the reasons stated above, the Court will deny Plaintiff's post-trial motion for judgment as a matter of law or, in the alternative, for a new trial.

---

2019."). Plaintiff's motion may therefore be properly denied for lack of merit.